[No. 32010. Department Two. December 11, 1952.]

CAROLINE MERRITT, *Respondent,* v. THE DEPARTMENT OF
LABOR AND INDUSTRIES *et al., Appellants.*[1]

[1]Reported in 251 P. (2d) 158.

*The Attorney General, Bernard A. Johnson, Assistant,* and *Donley & Ingram,* for appellants.

*F. W. Loomis,* for respondent.

HAMLEY, J.—This case arises out of a claim for a pension filed with the department of labor and industries by the surviving widow of Caleb H. Merritt. The claim was rejected by the supervisor of industrial insurance, and the supervisor's action was sustained by the board of industrial insurance appeals. The case next came before the superior court, where, after a trial by the court without a jury, the order of the board was reversed. The department and the employer, Bay City Lumber Company, have appealed to this court.

Merritt was sixty-eight years old at the time of his death on November 25, 1949. He had worked for twenty-four years as a resaw operator at the Bay City Lumber Company mill. His duties required him to sit on a bench and handle various levers with either hand. One of the levers had a pressure of approximately forty pounds when moved. In operating some of the levers, it was necessary to reach approximately three feet. No lifting was required, but the work called for continual movement of the upper part of the body.

On November 12, 1949, Merritt was admitted to Grays Harbor Community Hospital, because of signs of bronchial pneumonia. He responded well to treatment, and was discharged from the hospital on November 16, 1949. While at the hospital, Merritt submitted to chest X ray, which showed enlargement of the heart. His physician advised Merritt against returning to work. This advice was similar to that which he had given Merritt on several occasions during the preceding year, when consulted for symptoms of coronary artery deficiency.

Disregarding the advice of his physicians, Merritt returned to work on either November 18 or 25, 1949, the evi-

dence being in conflict as to the date. November 25th, Merritt worked a full eight-hour shift at his regular job as resaw operator. The sawmill closed at 5:00 p. m. He then went to the company tool shed and changed his clothes. At 5:20 p. m., the night watchman found Merritt on the floor of the company tool shed, unconscious. He was taken to a hospital immediately, where he was pronounced dead on arrival.

At the request of the department, an autopsy was performed by Drs. Watkins and Baker, of Aberdeen. No conditions to which death could be attributed were noted except in connection with the heart. The probable cause of death, as revealed by the autopsy, was the clogging of the right coronary artery, which was markedly sclerotic, by a thrombus, or blood clot, which was approximately one inch long. The source of this thrombus, according to Dr. Watkins, who gave the only sworn testimony in the case, was an aneurism, or protrusion, approximately one inch in diameter and one-half inch in elevation, over the lateral wall of the left ventricle. The aneurism was apparently of long standing and had probably developed as a result of a myocardial infarction of some years previous.

Dr. Watkins testified that, while the arteriosclerosis contributed to death by narrowing the arterial walls, the fatal attack was precipitated by some physical activity which caused the clot to let loose. It was his view that such slight physical activity as would be involved in stooping over to pick up a stick, or driving a car, probably would not bring about such an attack. It would have to be some activity that would cause the heart to contract a little unusually, the witness testified. Such activities as running fast across the room, going upstairs quickly, carrying a heavy armload of wood, or walking fast to catch a bus, were given as examples of the kind of activity which would probably bring about an attack such as Merritt suffered.

Based on the autopsy, Dr. Watkins expressed the opinion that the clot let loose from the aneurism and began blocking the coronary artery not more than an hour before Merritt

was found unconscious. Because of this close proximity between the time Merritt was known to be working and the time when the attack occurred, Dr. Watkins reached the conclusion that decedent's work "undoubtedly" contributed in a material degree to the precipitation of the thrombus which caused his death. When then advised of the nature of Merritt's work, through the propounding of a hypothetical question, Dr. Watkins reaffirmed his opinion that death was due to some activity connected with decedent's work.

Appellant lumber company assigns error upon the entry of findings of fact Nos. 1 and 3. These findings pertain to decedent's age, employment on the date of death, and circumstances surrounding the discovery of his body and his transportation to the hospital where he was pronounced dead. It is contended that these findings are not supported by any sworn testimony, but only by unsworn letters and records in the departmental file.

At the hearing before the board, these letters and records, consisting of thirty-seven pages, were, upon stipulation between respondent and appellant department, admitted in evidence as exhibit A, with the reservation that they would not be presented to a jury. The employer was not represented at the board hearing. The board made use of this exhibit in arriving at its findings. In the proceedings before the superior court, where a jury was waived, exhibit A was offered in evidence by the department. Counsel for appellant employer advised the court that he had no objection.

■ Appellant employer, having made no objection in the trial court, may not object here on the ground that the exhibit contravenes the rule excluding hearsay evidence. Hearsay evidence, when received without objection, has probative value depending upon its character. *Munday v. Department of Labor & Industries*, 35 Wn. (2d) 374, 213 P. (2d) 481. Appellant employer makes no contention that the facts are otherwise than as stated in findings of fact Nos. 1 and 3. In our opinion, the letters and records in question have sufficient probative value to support the challenged findings.

Appellant employer also assigns error upon the entry of finding of fact No. 11, which reads as follows:

"That Caleb H. Merritt died November 25, 1949, due to an industrial injury within the meaning of the Workmen's Compensation Law of the State of Washington, sustained in the course of and due to his hazardous industrial employment as an employee of said employer, Bay City Lumber Company on the date of his said death."

Appellant employer's objection to the first few words of the first sentence of this finding is similar to that which it made to findings of fact Nos. 1 and 3, and need not be further discussed. The objection to the remainder of the finding is that it is a conclusion of law rather than a finding of fact.

In our view, the recitals in this paragraph to the effect that death was due to an industrial injury sustained in the course of decedent's hazardous industrial employment, deal with a mixed question of fact and law. Read in the light of the trial court's oral opinion, the facts found with respect to the cause of death and the circumstances surrounding that event are as set out earlier in this opinion. Appellant employer does not appear to controvert those facts, but argues only that they do not warrant the granting of a pension. This question will be considered in connection with the remaining assignments of error.

Both appellants join in contending that, under the facts as set out above, the department and board were correct in holding that Merritt's death was not due to an "injury," as that term is defined in the workmen's compensation act. The applicable statutory provision reads as follows:

"The word 'injury' as used in this act means a sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result, and occurring from without, and such physical condition as results therefrom." Rem. Rev. Stat. (Sup.), § 7675 (In different form, RCW 51.08.100).

In presenting this point, appellants first call attention to the interval of twenty minutes between the time Merritt left his work at 5:00 p. m., and the time he was found on the floor of the tool shed. This raises the question of whether respondent proved that the "happening" which

brought about Merritt's death occurred during his employment rather than afterwards. It also raises the question of whether, if there was such a "happening" during the course of decedent's employment, it can be said (in view of the twenty-minute interval) that the physical effect thereof upon decedent was "an immediate and prompt result" of that happening.

The trial court, in its oral decision, took note of the twenty-minute interval and conceded that this gave rise to some speculation. The trial court found in effect, however, that a happening (overexertion or overstrain) occurred during the course of Merritt's employment, and that the releasing of the thrombus, causing Merritt's death, was an immediate and prompt result of that happening.

This finding is amply supported by the record. The uncontroverted evidence, as summarized above, establishes the fact that death due to coronary thrombosis was precipitated by some exertion put forth by Merritt within one hour of his death. The testimony indicates that the slight exertion required in changing clothes would probably not have loosened the blood clot and brought about this heart attack. On the other hand, the evidence shows that the kind of physical exertion involved in performing decedent's duties as a resaw operator would have been sufficient to loosen the clot. Dr. Watkins gave uncontroverted opinion testimony that, in view of these circumstances, decedent's work "undoubtedly" contributed to the attack. This sufficiently disposes of any question concerning the twenty-minute interval immediately preceding the attack.

Appellants next argue that for the injury to have been "of a traumatic nature" as required by the statute, there must be a showing of some unusual exertion connected up with the death of the decedent. It is true that the work being performed by decedent during the final forty minutes of his employment, while strenuous, was not shown to have been unusual or excessive; nor was there evidence that any particular exertion or movement during that period was the immediate cause of the attack. Appellants contend that

the lack of proof as to these factors is fatal to the claim, relying principally upon *Higgins v. Department of Labor & Industries,* 27 Wn. (2d) 816, 180 P. (2d) 559, to support this view.

This same contention was made and answered in *McCormick Lbr. Co. v. Department of Labor & Industries,* 7 Wn. (2d) 40, 108 P. (2d) 807. In that case, it appears that a logger with a chronic heart condition collapsed and died while performing his usual and customary work of cutting and sawing trees. There was no evidence that the exertion was unduly violent or strenuous, or was performed under unusual conditions. Two doctors testified, however, that the exertion which was put forth was a definite contributing factor to death. The company there contended that an injury is not "of a traumatic nature," within the meaning of the statute, unless the exertion is violent or strenuous, or is performed under unusual conditions.

Rejecting this argument, we affirmed a judgment upholding the claim, saying after a thorough review of the cases:

"What this court has positively declared as its accepted rule, under both the original and the present definition of 'injury' is this: An accident arises out of the employment when the required exertion producing the accident is too great for the man undertaking the work, *whatever the degree of exertion or the condition of the workman's health.*

"To say now that some unusual effort or strain is necessary to render death compensable, would not only be in direct conflict with the plain and emphatic language of our holdings, but would also introduce an element of uncertainty and confusion, in that every case would present a problem as to the standard to be used in determining whether or not, in a given instance, the exertion was unusual, and whether or not the workman was expending only the ordinary exertion required in a particular line of employment. The rule above stated has been accepted in this state after much discussion and diversity of opinion. It is now firmly established, and we see no reason for departing from it." (pp. 59-60)

This rule has been followed in every succeeding case which has dealt with the issue of trauma. *Sumerlin v.*

*Department of Labor & Industries*, 8 Wn. (2d) 43, 111 P. (2d) 603; *Northwest Metal Products v. Department of Labor & Industries*, 12 Wn. (2d) 155, 120 P. (2d) 855; *Guiles v. Department of Labor & Industries*, 13 Wn. (2d) 605, 126 P. (2d) 195; *Guy F. Atkinson Co. v. Webber*, 15 Wn. (2d) 579, 131 P. (2d) 421, 137 P. (2d) 814; *Long-Bell Lbr. Co. v. Parry*, 22 Wn. (2d) 309, 156 P. (2d) 225; *Olympia Brewing Co. v. Department of Labor & Industries*, 34 Wn. (2d) 498, 208 P. (2d) 1181; *Fleischman v. Department of Labor & Industries*, 34 Wn. (2d) 631, 209 P. (2d) 363; *Petersen v. Department of Labor & Industries*, 40 Wn. (2d) 635, 245 P. (2d) 1161.

The *Higgins* case did not change in any manner the rules laid down in the *McCormick* case relative to the definition of the term "traumatic." As was clearly indicated in the *Higgins* case, the question there before the court was not as to the degree of exertion required to have an injury of a traumatic nature, but rather as to the meaning of the phrase "a sudden and tangible happening." There was no statement made there which departed from the rule of the *McCormick* case as to the degree of exertion necessary to meet the statutory mandate. That the decedent here experienced shock or exertion "slight or great" in the course of his employment, was proved by the evidence, summarized above, describing the physical exertion involved in performing his work at the mill. This being so, his injury was "of a traumatic nature."

Appellants' argument that the statutory interpretation by this court of the term "sudden and tangible happening" in the *Higgins* case precludes recovery here is also without merit. In that case, which was not a heart case, Higgins worked for about six months firing and tending a battery of boilers. At the end of this period, he was forced to quit work because of his physical condition. The evidence showed that his difficulty was caused by chronic pulmonary emphysema, which is a ballooning or distention of the air cells and loss of elasticity of the lung tissue. The testimony disclosed that this was a degenerative disease coming on in middle life. While the disease seemed to progress while Higgins worked, and finally forced him to quit, we found

that his inability to work stemmed only from the effects of the disease.

All of the earlier decisions referred to in the *Higgins* case were cited in connection with the discussion of the statutory requirement that the happening be "sudden and tangible." In the cited cases, however, there was no question but what there had been some exertion or happening. In the *Higgins* case, we were called upon, for the first time, to determine the meaning of the term "sudden and tangible happening." We expressly stated that, to be a "sudden and tangible" happening, it must be a happening "which can be fixed at a point of time." We specifically held, in that case, that such a "happening" had not occurred.

■ It is apparent that the factors which barred recovery in the *Higgins* case are not present here. There, we found no sudden and tangible happening, no matter of notoriety, no event which could be fixed in time, but rather an incapacity due to the relatively slow and insidious inroads of a progressive and apparently incurable disease. Here, the uncontroverted testimony of Dr. Watkins is to the effect that the exertion which contributed to the heart attack by dislodging the thrombus occurred within an hour of Merritt's death, at a time when he was working. We hold there was a sufficient sudden and tangible happening to come within the meaning of the statute.

■■ In our view, the trial court did not err in finding and concluding that Merritt's death was due to an industrial injury within the meaning of the workmen's compensation act. The *prima facie* correctness of the order of the board of industrial insurance appeals was overcome when respondent demonstrated, to the satisfaction of the trial court and this court, that there was not sufficient evidence to support the board's order. *St. Paul & Tacoma Lbr. Co. v. Department of Labor & Industries,* 19 Wn. (2) 639, 144 P. (2d) 250.

The judgment is affirmed.

SCHWELLENBACH, C. J., HILL, FINLEY, and OLSON, JJ., concur.