JUANA RIVERA CABRERA and the minor RESTITUTO MALDO-NADO ALVARADO, ETC., Petitioners, *v.* INDUSTRIAL COM-MISSION OF PUERTO RICO, ETC., Respondent; G. ATILES MORÉU, MANAGER OF THE STATE INSURANCE FUND, Intervener.

No. 494. Argued May 9, 1956.—Decided June 18, 1956.

*A. Cadilla Ginorio* for petitioners. *Aida Casañas O'Connor* and *Donald R. Dexter* for intervener.

PER CURIAM.

In view of the workman's idiopathic condition (hypertrophy and acute dilatation of the heart), of which his employer had knowledge, the nature of his work, and the exertion made by him shortly before his death resulting from cardiac collapse brought about by dilatation of the heart, it was established in this case that the workman made the unusual exertion which is required for death to constitute a compensable accident under Act No. 45 of April 18, 1935 (Sess. Laws, p. 250), as amended. See *Cordero* v. *Indus-*

*trial Commission,* 68 P.R.R. 118 (1948) ; *Masse* v. *James H. Robinson Co.,* 301 N. Y. 34, 92 N. E. 2d 56 (1950). Consequently, the order of the Industrial Commission will be set aside and the case is remanded for determination of the corresponding compensation under the law.

The Chief Justice and Mr. Justice Marrero dissented.

---

MR. JUSTICE NEGRÓN FERNÁNDEZ, concurring.

In this appeal petitioners challenge the weighing of the expert evidence made by the respondent Commission and its conclusion that the death of workman Restituto Maldonado —certified to, without an autopsy, as resulting from *cardiac collapse brought about by dilatation of the heart*—was not compensable under Act No. 45 of April 18, 1935 (Sess. Laws, p. 250), as amended.

The evidence, as summed up in this case by the respondent Commission, is the following:

"Witness Víctor Rivera Muñoz testified, briefly, that in March 1953 he was the director of the municipal hospital of Arecibo; that he knew workman Restituto Maldonado; that the latter worked as chauffeur of the municipal hospital ambulance; that his work consisted of driving the ambulance transporting patients back and forth, and occasionally also acting as stretcherman; that on the day of his death the workman finished washing the ambulance and went up to the witness' office; that he sat on a chair next to the witness' desk; that the witness went out of his office and, as he went past the workman, he saw him seated with his arms crossed; he then heard a noise and saw the workman lying on the floor; that he picked him up and laid him on a stretcher; and that the physician on duty examined him and pronounced him dead.

"Dr. Julio A. Santos testified, briefly, that he had known the workman for many years; that he treated him as a private patient; that in 1940 the witness took charge of the municipal charity in Arecibo and recommended the workman to work as ambulance chauffeur; that the workman at that time was young and healthy, but in the past years had developed a lesion in the mitral valves probably of rheumatic origin, had acute hyper-

trophy of the heart and slightly high blood pressure; that he noticed on many occasions that he was fatigued when he came to the office; that he advised him to take digitalis continuously and to quit work, that any exertion or even driving the ambulance might cause his death, besides endangering the life of those riding therein; that the workman said he could not quit work, that he needed to work; that he died suddenly as he thought he would; that his condition was such that he could not exert himself at all; that in the discharge of his duties as chauffeur of the municipal ambulance, sometimes the workman worked 24 hours, and that the effort of driving the ambulance could hasten his death; that the workman could die at any moment in view of his condition.

"Dr. José Angel Martínez testified, briefly, that he has been the medical director of the municipal hospital of Arecibo since 1949; that he was not in the hospital when the workman died; that he was called and when he arrived the workman was dead; that he knew that the workman had for some time been suffering from a heart disease—dilatation of the heart—and that the death was certified to as due to a cardiac collapse by dilatation of the heart; that on several occasions the witness recommended the transfer of this workman because of his illness, but no opportunity appeared to give him lighter work for the same or better compensation; that the fact that he continued in that job helped to hasten his death, but that there was no question that he would die of that disease.

"Dr. G. Marqués testified, briefly, that he shares Dr. Martínez' opinion, adding that when he first undertook radiological work he made a fluoroscopy of the workman which disclosed murmurs and acute hypertrophy of the heart; that the witness told the workman he had a bad heart and that he should not exert himself; that he was not his doctor but gave him this advice.

"The evidence in this case shows that workman Restituto Maldonado was suffering from hypertrophy and dilatation of the heart; that he knew he was suffering from this disease; that he had been advised to avoid any exertion, and that on March 27, 1953, while performing his work as chauffeur of the municipal ambulance, he died suddenly while seated in the director's office; that his death was certified as due to cardiac collapse by dilatation of the heart."

The rule for determining the compensability of heart deaths occurring in the course of work has inevitably dispensed with, according to a strong line of authorities during the past years, the strict unusual-exertion requirement in order to accept the more adequate usual-exertion test as controlling of the right to compensation whenever coronary thrombosis, myocarditis, dilatation of the heart, among others, are involved. 1 Larson, *Workmen's Compensation Law*, § 38.30, p. 526 *et seq.; Brzozowskit Case*, 102 N. E. 2d 399 (Mass., 1951). See, also, Horovitz on *Workmen's Compensation* 88; 12 *NACCA Law Journal* 65; 11 *NACCA Law Journal* 74–16.

According to this rule there must be an exertion—some exertion—capable medically of causing the collapse, for the natural progress of the disease may bring it to its fatal climax during working hours when the employee's activity involves no effort which can support medically a causal connection. 1 Larson, *op. cit.*, § 38.83, p. 565 *et seq.*

In the case at bar, the employee was suffering from hypertrophy of the heart and had murmurs. He used to take digitalis daily. He was thus able for several years to perform his work as driver of the municipal ambulance, on occasions acting as stretcherman carrying patients back and forth, working at times as long as 24 hours a day. His immediate superiors—doctors of the municipal hospital of Arecibo—advised the employer on several occasions to transfer the employee to some lighter work since he was in no condition "to overexert" himself. The medical evidence summed up by the Commission, as it appears from the record, reveals that "the fact that he continued working in that job helped to hasten his death," although "there was no question that he would die of that disease."

It is an uncontroverted fact that the day he died the employee *finished washing the ambulance*, went up to the

office of the hospital director, sat on a chair, and a few minutes later he fell to the floor and was dead when they went to help him.

Under the facts of this case, I believe that the causal connection between the workman's death and his work was established. By reason of his cardiac condition, an exertion greater than that which the condition of his heart could tolerate might bring on a collapse of the vital organ which had been overtaxed as a result of his work conditions. Immediate collapse is not essential to establish causal connection. Ernest P. Boas, *Cardiac Injury Resulting from Effort or Trauma,* cited in 15 NACCA Law Journal 504–05. The exertion required by the task of washing an ambulance—a task which preceded the collapse by a few minutes and which he did not perform daily—complies fully with the causal requirement under the liberal usual-exertion rule, and possibly the strict unusual-exertion rule. *Cordero* v. *Industrial Commission,* 68 P.R.R. 118. Death caused by an act which, because of a workman's physical condition at the time, amounts to *overexertion,* is due to an accident within the meaning of the law, *Montaner* v. *Ind. Com.,* 54 P.R.R. 113; *Merritt* v. *Department of Labor, etc.,* 251 P. 2d 158 (Wash., 1952); and a pre-existing heart disease does not preclude an award of compensation where death is hastened by such overexertion. *Colón* v. *Industrial Commission,* 59 P.R.R. 842. *Cf. Cordero, Mgr.* v. *Industrial Commission,* 62 P.R.R. 621. This is so because industry hires the workman in the physical condition in which it finds him. On the other hand, workmen's accident compensation laws are remedial in nature and should be liberally construed. *Montaner* v. *Industrial Commission,* 54 P.R.R. 686; *Cordero, Mgr.* v. *Industrial Commission,* 61 P.R.R. 349.

For the reasons stated, I concur in the reversal of the order of the Commission.