[No. 33643.  Department Two.  October 4, 1956.]

HOWARD G. HAERLING, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*.[1]

*Fred M. Bond*, for appellant.

*The Attorney General* and *Robert David Ashley, Assistant*, for respondent.

MALLERY, J.—The claimant, Howard G. Haerling, was engaged in extrahazardous employment as a deputy sheriff of Pacific county.  About one a. m. on June 12, 1953, he suffered a coronary occlusion while at home in bed.  His wife called the family physician, who hospitalized him for two weeks. He has not worked since that time.

On August 11, 1953, claimant filed an accident report and claim for compensation with the department of labor and industries, which the supervisor rejected upon the grounds that (1) there was no proof of a specific injury at a definite time and place in the course of his employment; (2) the condition was not the result of an industrial injury as defined by RCW 51.08.100; and (3) it was not an occupational disease under RCW 51.08.140.

[1]Reported in 301 P. (2d) 1078.

On May 17, 1955, the board of industrial insurance appeals sustained the supervisor's order, and claimant appealed to the superior court of Pacific county, which entered a judgment of dismissal on December 13, 1955. The claimant then appealed to this court on December 30, 1955.

The facts construed most favorably to appellant are as follows: At the time of his heart attack, appellant was fifty-four years of age, had been a deputy sheriff since 1950, and subject to call at all times. The sheriff had suffered a loss of vision in February, 1953, and thereafter appellant had assumed some of his duties in addition to his own. From May 4, 1953, until early June, 1953, he was doing the work of three men, and working thirteen to eighteen hours a day.

On June 11, 1953, appellant was called at about ten forty-five p. m. and drove two miles to investigate a complaint regarding a disturbance caused by some "hot-rodders." When he started home an hour later, he experienced constricting pains in his chest and rested by the side of the road for a few minutes. He arrived home about midnight, had a cup of coffee with his wife, and retired. He suffered the coronary occlusion shortly thereafter.

His family physician testified that he had found no heart condition when he examined appellant in 1951 for an insurance company; that the only predisposing cause of coronary occlusion is "arteriosclerosis or hardening of the arteries, and in some cases of diabetes unusual stresses and strains, emotional factors are brought to bear to bring [it] about"; that "diabetes does predispose to a coronary occlusion because it predisposes to arteriosclerosis"; and that "the strain and the physical exertion that this man was undergoing at the time was a direct predisposing cause of his coronary occlusion."

It is appellant's contention that this evidence shows a direct causal relationship between the overexertion of appellant's employment and the coronary occlusion. He relies upon the overexertion to constitute an *industrial injury* under the purview of the statute. He does not contend that the coronary occlusion is an occupational disease.

In this case, there is no sudden and tangible happening, of a traumatic nature, upon which the workman relies as the cause of his *injury*. In *Mork v. Department of Labor & Industries*, 48 Wn. (2d) 74, 291 P. (2d) 650, we said:

"The act of the deceased in returning to his station is not an industrial accident. As we said in *Higgins v. Department of Labor & Industries*, 27 Wn. (2d) 816, 180 P. (2d) 559:

" 'There is no sudden and tangible happening in the present case, no matter of notoriety, nor an event which can be fixed in time, but rather an incapacity due to the relatively slow and insidious inroads of a progressive . . . disease. It is testified that *its progress was accelerated by the character of the work* which appellant did for Du Pont at Hanford, but that falls far short of establishing an injury within the statutory definition with which we are here concerned."

The cumulative effect of long continued routine and customary duties upon a workman, regardless of the hours devoted thereto, is not a sudden and tangible happening. The statute contemplates a *happening*, of a traumatic nature, producing an immediate and prompt result, in order for the *injury* resulting therefrom to be compensable under the act. A cumulative effect, however injurious, is noncompensable unless it constitutes an industrial disease, not here in issue.

The judgment is affirmed.

Ott, Hill, Weaver, and Rosellini, JJ., concur.