[No. 34871.   Department Two.   March 5, 1959.]

VERNON FAVOR, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant*.[1]

[1]Reported in 336 P. (2d) 382.

The *Attorney General* and *Michael J. Cronin, Assistant,* for appellant.

*Theodore H. Little* and *Theodore M. Ryan,* for respondent.

HILL, J.—The issue presented in this case is whether a coronary occlusion caused by emotional stress and strain (anxiety and worry) is an occupational disease as defined in the workmen's compensation act of the state of Washington. The definition is found in RCW 51.08.140 and is "such disease or infection as rises naturally and proximately out of extrahazardous employment."

The facts are: The claimant started working in the state department of agriculture in 1949 as a cattle-brand inspector and a commission-merchant inspector covering Asotin and Whitman counties. In 1952 a regulatory division was created within the department, and, while the claimant's territory remained the same, he was given additional duties and increased responsibilities and was commissioned as a regulatory officer. It is emotional stress and strain (anxiety and worry) arising out of those duties and responsibilities that is relied on as the cause of the claimant's coronary occlusion, which occurred while he was driving his car.

The testimony of his attending physician, Dr. Walter W. Seibly a general practitioner, was that emotional stress from the claimant's employment probably caused the coronary occlusion, and he explained it in this way,

". . . I have seen instances in which people can bring on a coronary type of pain due to narrowing of the blood

vessels, which can be brought on by emotional upset when they are angry or frightened. I don't think it is hard to prove that anxiety and stress and strain factors are important as far as circulation and supply to the heart are concerned.

"  .   .   .

"Where a person is under additional stress, that is, you can't measure it in one small amount. It is summation of that stress over each day, each week, each month, as it goes on month after month, and I think it does play an important factor. We know that because of stress that blood sometimes undergoes a sufficient amount of damage to the wall because of spasm during the period of stress. Whether it is short or whether it lasts for several hours, each time that spasm occurs there is a certain amount of damage to the wall, and over a period of weeks or months there are irreversible changes in that blood vessel."

There was no history of such spasms. In answer to the question, "Did you ever feel your health was being affected by your work to any degree that you could notice," Mr. Favor replied: "I never gave it a thought." He testified further that when the attack occurred it was a surprise.

Dr. Arthur M. Clark, Jr., a heart specialist who examined the claimant two months after the occlusion, was called by the department, and testified that a coronary occlusion is not in itself a disease but the end result of some other disease or condition. He found no evidence of hypertension, and, in his opinion, the real cause of the occlusion could only be definitely determined by a pathological examination, but that the probability was atherosclerosis. This is a disease prevalent in seventy-five per cent of those over thirty years of age and in practically everybody over forty (the claimant was forty-five). We quote Dr. Clark as to the nature of the disease,

"Atherosclerosis is a disease in which fat-like particles are deposited beneath the linings of the blood vessels of the coronary arteries, or the arteries of the heart. This is a progressive phenomena or disease, with narrowing. There may be ulceration of the plaque and the thrombus form or hemorrhage under the plaque and drop in pressure such as

to produce dead muscle as the mechanism involved in the actual myocardial infarction."

" . . .

" . . . there are more deposits of fatty substances with encroachment on the lumen like a rusty pipe, and this may become ulcerated for reasons we do not know, and thrombus may form and hemorrhage occur underneath, lifting the plaque and occluding the vessel, or sudden drops in pressure may produce an occlusion or an infarction, excuse me, without occlusion."

The board of industrial insurance appeals found that the coronary occlusion suffered by the claimant was not an occupational disease. On the claimant's appeal from the board, the superior court—relying on Dr. Seibly's testimony—concluded that the coronary occlusion was an occupational disease. The department appeals to this court.

This case presents an entirely new theory in heart cases. There having been no unusual exertion, the claimant cannot come within the rule of heart cases such as *Towne v. The Department of Labor & Industries* (1958), 51 Wn. (2d) 644, 320 P. (2d) 1094; *Porter v. The Department of Labor & Industries* (1958), 51 Wn. (2d) 634, 320 P. (2d) 1099; indeed, he is expressly excluded from a claim of injury by *Haerling v. The Department of Labor & Industries* (1956), 49 Wn. (2d) 403, 301 P. (2d) 1078, and, consequently, he urges that the coronary occlusion which he suffered was an occupational disease. The claimant having returned to work, the only items involved are medical and hospital expenses, together with time loss. The claimant's case comes to us without the benefit of supporting case authority; every case relied upon by him is in the same category as the *Towne* and *Porter* cases, *supra*.

In these cases an unusual, exceptional, or extraordinary physical exertion or strain, quite apart from the usual routine of employment, was held to have caused the fatal heart attack. They were considered injuries resulting from a provable, tangible happening. This is a far cry from an occupational disease arising naturally and proximately from employment.

To meet the issue presented squarely on the merits, as we desire to do, it is necessary to make two assumptions, both favorable to the claimant:

First: That coronary occlusion is a disease; second, that the claimant was engaged in extrahazardous employment. We shall indicate briefly why we classify these as assumptions rather than established facts.

The testimony of Dr. Arthur M. Clark, Jr., supported by the medical authorities we have examined and accepted by the board of industrial insurance appeals, is that a coronary occlusion is not the name of a disease, but rather a descriptive term of an end result. It is the name applied to a syndrome; a pathological finding that a coronary artery has been blocked, and it does not connote by what mechanism or by what means. Opposed to this we have the statement (several times repeated by Dr. Seibly) that a coronary occlusion is a disease and an occupational disease. Whether or not it is a disease, Dr. Seibly, as an expert witness, is entitled to express his opinion and, we assume, that he is right. His conclusion that it is an occupational disease within the purview of the workmen's compensation act is a matter the court must determine, and his opinion on that point is without significance.

The legislature has never declared the claimant's occupation extrahazardous. He comes under the act by virtue of its elective provision, RCW 51.12.110. There seems to be some contention that he is empowered to make arrests and that he could be classified as a peace officer, but there is no evidence that he ever arrested anybody. He concedes that his work is that of an inspector and investigator.

▮ It should be noted that if a workman under the act is injured, what he is doing at the moment of injury does not have to be extrahazardous for him to be entitled to benefits; it is only necessary that the injury be in the course of his employment, and that the employment be defined in the act as extrahazardous, or be incident to a production process defined as extrahazardous, or have been brought under the act by an elective adoption. An occupational dis-

ease, however, must arise "naturally and proximately out of extrahazardous employment." We have assumed, without deciding, that the claimant in this case is engaged in extrahazardous employment.

We have heretofore pointed out that our workmen's compensation act was not intended to provide workmen with life, health, or accident insurance at the expense of the industry in which they are employed. It was intended to provide, at the expense of the industry employing them, a sure and speedy relief for workmen (or their dependents) where disability or death resulted from injuries sustained in the course of their employment or from occupational diseases arising naturally and proximately from extrahazardous employment. All defenses which an employer had at common law against an action for injury or death of an employee were abolished, and a fixed and certain liability was established "as a part of the cost of the industry, just like the pay-roll, the repair account, or any other item of cost." *Mountain Tbr. Co. v. State of Washington* (1916), 243 U. S. 219, 243, 61 L. Ed. 685, 37 S. Ct. 260; *Stertz v. Industrial Ins. Comm.* (1916), 91 Wash. 588, 158 Pac. 256; *State ex rel. Davis-Smith Co. v. Clausen* (1911), 65 Wash. 156, 117 Pac. 1101.

It is obvious that to prevent imposition upon the fund, created from the required contributions for the relief of workmen and their families, there must be some tangible and provable relationship between the injury or the disease suffered and the employment. This relationship is not to be established on a purely subjective basis.

The legislature's definition of injury as "a sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result, and occurring from without [RCW 51.08.100];" bespeaks its concern that injuries have something tangible about them, a relationship in time and space that is susceptible of investigation. *Windust v. The Department of Labor & Industries* (1958), 52 Wn. (2d) 33, 323 P. (2d) 241; *Haerling v. The Department of Labor & Industries, supra*; *Petersen v. The Department of Labor &*

*Industries* · (1952), 40 Wn. (2d) 635, 638, 245 P. (2d) 1161; *Higgins v. The Department of Labor & Industries* (1947), 27 Wn. (2d) 816, 820, 180 P. (2d) 559.

We have insisted in aggravation cases that a doctor's opinion must be based on something more substantial than subjective symptoms. *Phillips v. The Department of Labor & Industries* (1956), 49 Wn. (2d) 195, 298 P. (2d) 1117; *Kresoya v. The Department of Labor & Industries* (1952), 40 Wn. (2d) 40, 240 P. (2d) 257; *Cooper v. The Department of Labor & Industries* (1944), 20 Wn. (2d) 429, 147 P. (2d) 522.

The proof in our occupational disease cases has, in each instance, been objective in character; a condition in the plant or industry that someone else beside the claimant was aware of and could describe. *Romeo v. The Department of Labor & Industries* (1943), 19 Wn. (2d) 289, 142 P. (2d) 392 (dust from employment, as sand blaster; causal relationship to disability from sinus infection not established). *St. Paul & Tacoma Lbr. Co. v. The Department of Labor & Industries* (1943), 19 Wn. (2d) 639, 144 P. (2d) 250 (wood dust; causal relationship to death from bronchial asthma not established). *Rambeau v. The Department of Labor & Industries* (1945), 24 Wn. (2d) 44, 163 P. (2d) 133 (welding fumes and smoke; causal relationship to death from lobar pneumonia not established). *Simpson Logging Co. v. The Department of Labor & Industries* (1949), 32 Wn. (2d) 472, 202 P. (2d) 448 (smoke and dust; causal relationship to disability from asthma established). *Ehman v. The Department of Labor & Industries* (1949), 33 Wn. (2d) 584, 206 P. (2d) 787 (carrying and placing bundles of flooring weighing sixty to eighty pounds; hands became lame, sore, and fingers cramped so they could not be straightened; condition called Dupuytren's contracture; causal relationship of employment to Dupuytren's contracture not established). *Parr v. The Department of Labor & Industries* (1955), 46 Wn. (2d) 144, 278 P. (2d) 666 (wood dust; causal relationship to disability from asthma not established).

██ Statements by a claimant as to purely subjective conditions, peculiar to himself, do not provide the objective

circumstances necessary to establish that a claimant's disease arose naturally and proximately from his employment.

■ Apart from the lack of objective circumstances in this case, we are satisfied that a coronary occlusion resulting from worry over the details incident to his job by a state agricultural inspector and regulatory officer does not meet the requirements of proximate cause imposed by the statute.

■ We should perhaps spell out clearly the distinction between injury and occupational disease as it relates to heart cases. A heart disease is generally a progressive development, the cause of which is rarely a single incident, but which is generally the accumulated effect of causes extending over a considerable period of time. Under our statute a workman with a pre-existing heart condition may suffer, as the prompt or immediate result of an unusual exertion, a death or disability which constitutes an injury and thus entitles him, or his dependents, to compensation. See the *Porter* case, *supra*.

On the other hand, the statute relating to occupational disease does not require that the cause produce an immediate or prompt result, as in the injury cases, but it does require that the disease arise "naturally and proximately" from the employment. The rule of proximate cause has thus been written into our occupational disease statute. As we said in *Simpson Logging Co. v. The Department of Labor & Industries, supra,*

" . . . The legislature is presumed to have been familiar with the meaning of 'proximate cause' as used by the courts, and that being so, when they defined as an occupational disease those diseases or infections as arise naturally and *proximately* out of extrahazardous employment, it would follow that they meant that the condition of the extrahazardous employment must be the proximate cause of the disease for which claim for compensation is made, and that the cause must be proximate in the sense that there existed no intervening independent and sufficient cause for the disease, so that the disease would not have been contracted but for the condition existing in the extrahazardous employment."

In this case, the claimant's employment was that of an inspector and regulatory officer of the state department of agriculture. The "but for" aspect of proximate cause requires that his disease (a coronary occlusion) would not have occurred but for his occupation, or a condition of labor incident thereto.

It seems obvious that, if men in all employments suffer the same disease as that of the claimant, it does not meet the proximate cause requirement of the statute; nor does the fact that the claimant worried about his work distinguish the case. Persons in all employments, and in all activities are exposed to the emotional stress and strain of anxiety and worry, and it cannot be said to have arisen naturally and proximately from the claimant's employment.

The order of the board of industrial insurance appeals, upholding the determination of the department of labor and industries that there was no occupational disease, is affirmed; and the judgment of the superior court, holding that the claimant's coronary occlusion was an occupational disease, is reversed with directions to dismiss the appeal from the order of the board of industrial insurance appeals.

WEAVER, C. J., MALLERY, and ROSELLINI, JJ., concur.

FINLEY, J., concurs in the result.