GARNETT M. LUPIEN, OVILA J. LUPIEN, Fatal, Claimant and Respondent, *v.* MONTANA RECORD PUBLISHING COMPANY, Employer, and Insurance Company of North America, Defendant and Appellant.

No. 10583

Submitted November 21, 1963.   Decided March 5, 1964.

Rehearing denied April 6, 1964.

390 P.2d 455.

Anderson, Symmes, Forbes, Peete & Brown, Billings, William Kirkpatrick and William J. Kelly, Butte, amicus curiae; Weymouth D. Symmes, Billings, and William J. Kelly, Butte, argued, for appellant.

Geoffrey L. Brazier, Helena, Geoffrey L. Brazier, Helena, argued, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment of the district court of the First Judicial District reversing a ruling of the Industrial Accident Board that respondent was not entitled to workmen's compensation by reason of the death of Ovila J. Lupien. The judgment held that respondent was entitled to compensation.

Ovila J. Lupien died of a heart attack on July 29, 1961. At the time of his death, he was employed by the Montana Record Publishing Company as a mailer and had been so employed for a period of 27 years. He reported for work on the day of his death at approximately 8:30 A.M. At about 9:00 A.M. he went home and drove his wife to her employment at the Shodair Hospital and returned to work. Sometime thereafter, Clayton Rickman, a fellow employee, chatted with Lupien while Lupien went about his work, leaving him at approximately 10:00 A.M. A few minutes later Lupien was found dead on the mailing bench.

No autopsy was performed but the medical consensus was that Lupien died of a myocardial infarct stemming from a progressive disease of the arteries—arteriosclerosis.

The Industrial Accident Board found:

"That the preponderance of the evidence established that the deceased died of an acute coronary occlusion resulting from arterio sclerotic disease of long standing, (and) That there was no tangible happening or episode involving trauma or injury from an unexpected cause in the course of or arising out of the employment of the said deceased prior to his death." The then Board concluded that therefore it was not compensable.

The claimant, the widow as beneficiary, appealed to the district court. The district court reversed the decision of the Industrial Accident Board and judgment was entered in favor of the claimant. The district judge filed an opinion with his findings and held in substance that the 1961 amendment to R.C.M.1947, § 92-418, did not change the law theretofore exist-

ing. As a matter of fact the district judge went so far as to say the amendment was "more liberal."

The specifications of error are:

"(1) The district court erred in overruling the findings of fact and conclusions of law of the Industrial Accident Board in holding that they were unreasonable and not supported by evidence.

"(2) The district court erred in entering judgment in favor of the claimant and against the appellants.

"(3) The district court erred in finding as a fact that Ovila J. Lupien died of an industrial accident arising out of and in the course of his employment in view of the Board's finding to the contrary, which was supported by substantial evidence.

"(4) The district court erred in failing to affirm the findings of fact and conclusions of law of the Industrial Accident Board."

All of the specifications of error above resolve into the question of what is the meaning of the 1961 legislative enactment now codified as R.C.M.1947, § 92-418, as it applies to the facts of this case?

For convenient comparison we set forth in juxtaposition our old and new definitions of injury as contained in R.C.M. 1947, § 92-418, before and after amendment in the 1961 Legislative Session.

OLD:

"92-418. *Injury or injured defined.* 'Injury' or 'injured' refers only to an injury resulting *from some fortuitous event,* as distinguished from the contraction of a disease." (Emphasis supplied.)

NEW:

"92-418. *Injury or injured defined.* 'Injury' or 'injured' means a tangible happening of a traumatic nature *from an unexpected cause,* resulting in either external or internal physical harm, and such physical condition as a result therefrom and excluding disease not traceable to injury." (Emphasis supplied.)

418

The italicized phrases are the only provisions in the Montana Act which require that an injury be accidental to be compensable.

Under the old definition, the "injury" had the qualifying phrase "from some fortuitous event." The word "fortuitous" has been defined by this court as being "without known cause" in Nicholson v. Roundup Coal Mining Co., 79 Mont. 358, 257 P. 270, until the Rathbun v. Tabor Tank Lines, 129 Mont. 121, 283 P.2d 966, case, and the Murphy v. Anaconda Company, 133 Mont. 198, 321 P.2d 1094, case, when it came to include from an "unexpected result." Finally in Hines v. Industrial Accident Board, 138 Mont. 588, 358 P.2d 447, this court extended the definition to include injuries and death arising out of *a tangible happening of a traumatic nature from an unexpected cause or result,* as used in the Murphy case to include poliomeningitis, a disease.

The Hines case was decided by a three to two decision of this court. The opinion was handed down on December 30, 1960, and the dissent a short time later after the opening of the 1961 Legislative Session. It was remarked in Amicus Curiae brief herein that the definition of injury under the old Act was, in the Hines case, "relegated to complete oblivion."

In the Murphy case, supra, this court interpreted the Rathbun decision as holding:

"The Rathbun case holds an injury is accidental or results from fortuitous events where *either the cause* or *the result* is either unusual, unexpected or undesigned." (Emphasis added.)

■ Now then, in the light of this court's interpretation of the old Act definition, the Legislature changed the qualifying phrase specifically to include *"a tangible happening * * * from an unexpected cause."*

As pointed out, the old phrase "fortuitous event" included either (1) an unexpected *cause or* (2) an unexpected *result,* whereas the new phrase is limited to a "tangible happening of a traumatic nature from an unexpected *cause."*

The foregoing is not a play on words; rather, the distinction is the very heart of the problem as exhibited by our previous cases.

■ We shall return now to the instant case, and emphasize that our discussion deals with it and it alone. In substance, the Industrial Accident Board found that there was no tangible happening involving trauma from an unexpected cause in the course of Lupien's employment.

The district court found that "Lupien did die of a heart attack while engaged in his usual or normal activities." Then, somewhat contradicting that in the next sentence that "he died of a heart attack while expending approximately twice the physical effort that it was customary for him to use in doing his work the day before and the day of his death * * *."

Lupien was a mailer. He had been on the same job for twenty-seven years. There were two mailers employed, Lupien and Rudolph Anderson. One mailer would be on shift on Monday, Tuesday, Wednesday, and Friday. On Thursday, Saturday, and early Sunday morning both mailers would work. The job was described as making up lists for mailing, using galley trays, making up wrappers and bundling papers and mailing them out. The day of Lupien's death was on a Saturday. Usually two mailers worked that day, although not always. On this particular day Lupien worked alone. The district judge found that he worked unusually hard on Friday, the day before, because of the size of the newspaper that day; and also that he worked hard on Saturday, even though he took his wife to work and conversed with Rickman while he worked. The district judge also observed that Lupien was short and had to reach high to get supplies.

Even so, accepting the district court's version of the record, the "tangible happening of a traumatic nature from an unexpected cause" was not present. Everything done by Lupien was expected of him and by him. It was his work to do just

as he was doing and in varying degrees just as he had been doing for some twenty-seven years.

We think without going further that on its face the statute does not cover the death of Lupien. However, we should point out too that under the medical testimony as found by the Board, and as fairly gleaned from all of the medical opinions before the district court that there was no "external or internal physical harm" since it was shown that the myocardial infarct stemmed from a progressive disease of the arteries—arteriosclerosis. We shall not develop this point further, however, because of our ruling that no injury resulting from a tangible happening of a traumatic nature from an unexpected cause was shown.

At this point, too, we have not discussed the propriety of the district court reversing the findings of the Board. But see Moffett v. Bozeman Canning Co., 95 Mont. 347, 26 P.2d 973.

We shall turn now to the respondent's arguments and some of respondent's authorities. The definition of injury under the new Act, R.C.M.1947, § 92-418, was introduced as H.B. 140, and was then a verbatim reproduction of the Washington statute, R.C.W. 51-08-100.

As introduced, H.B. 140, § 6, had this language: [injury] "means a sudden and tangible happening of a traumatic nature producing an immediate or prompt result and occurring from without and such physical condition as results therefrom." The Senate amended by striking and inserting in lieu thereof: [injury] "means a tangible happening of a traumatic nature from an unexpected cause, resulting in either external or internal physical harm, and such physical condition as a result therefrom and excluding disease not traceable to injury." (See Senate Journal, 37th Session, p. 418.)

This Senate amendment subsequently became law. It is apparent that the Senate amendment made use of the "unexpected cause" language specifically to apply to the tangible happening of a traumatic nature.

Nonetheless, respondent urges that Washington is one of the states recognizing "cardiac cases" as being compensable under the Washington statute. He cites McCormick Lumber Co. v. Department of Labor and Industry, 7 Wash.2d 40, 108 P.2d 807; Merrit v. Department of Labor and Industry, 41 Wash. 2d 633, 251 P.2d 158; Haerling v. Department of Labor and Industry, 49 Wash.2d 403, 301 P.2d 1078; Windust v. Department of Labor and Industry, 52 Wash.2d 33, 323 P.2d 241; and Favor v. Department of Labor and Industry, 53 Wash.2d 698, 336 P.2d 382. Of course a "cardiac case" might be compensable under our own statute, under other situations or different circumstances.

Then too, we note the recent case of Lawson v. Department of Labor and Industry, Wash.1963, 385 P.2d 537. In that case, a bricklayer, who while working with bricks which were of awkward size and shape and weighing about twice as much as normal bricks, died of a heart attack. The Washington Court held that no "injury" was shown. That case, too, involved heavy work on days before the attack.

But, all of the discussion of cardiac cases is beside the point. Here we look to the facts of this case as previously discussed.

Respondent also cites us to other states and cases. It would unduly lengthen this opinion to discuss each and every state and case. To construe R.C.M.1947, § 92-418, as respondent would do, would be to nullify the 1961 Legislative amendment and restore our previous decisions culminating in doctrines expressed in the Murphy and Hines cases previously set out. It seems obvious that when R.C.M.1947, § 92-418, was amended by the 1961 Legislature, the intent of the Legislature was to change the definition of the word "injuries" theretofore existing.

The judgment of the district court is reversed.

MR. CHIEF JUSTICE JAMES T. HARRISON, MR. JUSTICE DOYLE and THE HONORABLE PAUL G. HATFIELD,

District Judge sitting in place of MR. JUSTICE JOHN C. HARRISON concur.

MR. JUSTICE ADAIR dissenting:

The district court found that Ovila J. Lupien, who, continuously for some twenty-seven years was an employee of the Montana Record Publishing Company of Helena, on July 29, 1961, "died of a heart attack while expending approximately twice the physical effort that it was customary for him to use in doing his work the day before * * * his death." As the result of such finding the district court rendered judgment holding that the respondent, Garnett M. Lupien, the widow of the deceased workman, was and is entitled to have and receive the workman's compensation for which she applied, and reversing the Industrial Accident Board and prior ruling to the effect that the respondent widow was not entitled to such compensation. In my opinion the district court's judgment was correct and it should be affirmed.