LETA ALICE JONES, Claimant and Respondent, v. BAIR'S CAFES, Employer, and TRUCK INSURANCE EXCHANGE, Defendants and Appellants.

No. 11475.
Submitted September 10, 1968. Decided October 14, 1968.
Rehearing denied October 28, 1968.
445 P.2d 923.

Lyman H. Bennett, Jr. (argued), Bozeman, for defendants and appellants.

James H. Morrow, Jr. (argued), Donald N. Nash, Edmund P. Sedivy (argued), Bozeman, for claimant and respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment of the district court entered on findings of fact and conclusions of law in favor of a claimant for an industrial accident. The district court reviewed the findings of the Industrial Accident Board which had found that the claimant had failed to prove an accidental injury arising out of and in the course of her employment. The district court, in effect, reversed the findings of the Industrial Accident Board.

Claimant filed a compensation claim with the Board arising from a back injury as a result of a strain suffered on March 18, 1967, arising out of and in the course of her employment with Bair's Cafes, at Bozeman. Her claim was denied and her petition for a rehearing was denied. Claimant appealed to the district court and upon motion, granted by the court, submitted additional testimony. The district court gave judgment for the claimant and defendants appealed to the Supreme Court.

Claimant, a female, 49 years old and married, was a dishwasher and laundry worker for several years before March 18, 1967. She had been employed for approximately two months as a dishwasher by Bair's Cafes at Bozeman, Montana. Her work shift was from 7:00 a.m. until 3:00 p.m., six days per week, eight hours per shift and her effective pay was $66.00 per week. The employer, Bair's Cafes, was enrolled under plan two of the Workmen's Compensation Act of Montana, and the insurance carrier was Truck Insurance Exchange.

On March 18, 1967, there was an unusual amount of work

due to a basketball tournament crowd. About 2:30 p.m., claimant, while in the course and scope of her employment picked up a heavy tray of dirty dishes from the floor and did suffer a back strain resulting in physical harm to her, being a lumbar sacral strain developing into ligamentous, severe muscle spasm to low back, sciatic nerve irritation, and probable disc trouble.

She will require future medical attention, possible hospitalization, and home traction treatment the rest of her life.

Following her injury, she notified her immediate boss and went home.

The defendants refused to acknowledge that claimant was entitled to compensation and denied compensation on the ground that the injury was not a compensable injury. The defendant insurance carrier has refused to pay any weekly compensation benefits. Claimant's bills for medical, hospital and necessary travel totaled $2,390.88 to the date of trial in the district court.

Since the 29th day of March, 1967, the claimant has been totally disabled for work as a dishwasher or as a laundry worker. She has totally lost her earning capacity in the open market at work for which she is qualified.

The district court judge found that competent medical testimony established claimant's injury and has resulted in total disability, permanent in character, by reason of the unusual strain she suffered on the 18th day of March, 1967; that the claimant was entitled to 50% of the weekly wages received at the time of the injury subject to a maximum compensation of $35.00 per week. This was calculated to be $33.00 per week.

The district court further found that the defendant insurance carrier has continuously refused to make any payments; that claimant in her petition for hearing, filed with the Board, asked for a lump sum settlement. The judge

concluded that claimant should receive all benefits in a lump sum, subject to the approval of the Board.

The issues on appeal are:

(1) Did the claimant and respondent suffer an accidental injury arising out of and in the course of her employment by the defendant and appellant, Bair's Cafes, on or about March 18, 1967?

(2) Did the district court have any reasonable basis to reverse the findings of the Industrial Accident Board to the effect that the evidence is not sufficient to support claimant's allegation that she suffered an accidental injury arising out of and in the course of her employment, or to reverse the conclusions of law of the Industrial Accident Board to the effect that claimant did not suffer an industrial accident in the course of her employment and that by reason of the fact that claimant did not suffer an industrial accident within the meaning of the Workmen's Compensation Act, her claim should not be maintained?

We shall discuss issue No. 2 above first. The general rule is—the findings of the Board come to the district court clothed with the presumption that the Board has decided correctly. See Stordahl v. Rush Implement Co., 148 Mont. 13, 417 P.2d 95 and cases cited therein.

In each of the cases involving the presumption of correctness of the Board's findings, this Court has applied the rule that "The district court on appeal from the board is not justified in reversing a finding of the board *unless the evidence clearly preponderates against such finding.*" Stordahl v. Rush Implement Co., supra. See also Rom v. Republic Coal Co., 94 Mont. 250, 22 P.2d 161. (Emphasis ours.)

In the instant case, really no new evidence was adduced before the district court. Yet the court set aside the negative finding of the Board that there was insufficient evidence and found that there was sufficient evidence. This could be put

"the evidence clearly preponderated against such finding" [of the Board].

The facts shown by the evidence are heretofore set out. There is nothing to the contrary. In effect, then, issue No. 1 as set forth above comes into play. Was there an accidental injury arising out of and in the course of the claimant's employment?

Section 92-418, R.C.M.1947, amended by the 1967 legislature reads:

" 'Injury' or 'injured' means a tangible happening of a traumatic nature from an unexpected cause, or unusual strain, resulting in either external or internal physical harm, and such physical condition as a result therefrom and excluding disease not traceable to injury."

Prior to 1961, section 92-418, R.C.M.1947, in defining injury or injured used the words "fortuitous event." The 1961 amendment used language requiring "a tangible happening of a traumatic nature from an *unexpected cause* * * *". Following this amendment, the cases of Lupien v. Montana Record Publishing Co., 143 Mont. 415, 390 P.2d 455, and James v. V.K.V. Lumber Co., 145 Mont. 466, 401 P.2d 282, were decided denying compensation to workmen who suffered at most only strain. This Court in the James case analyzed the problem as follows:

"The claimant was doing his regular work, the same work he had been doing for a year. His regular work required him to turn and pick up blocks.

"There is no evidence of any external force.

"R.C.M.1947, § 92-418, defines injury as follows:

" *'Injury or injured defined.* "Injury" or "injured" means a tangible happening of a traumatic nature from an unexpected cause, resulting in either external or internal physical harm, and such physical condition as a result therefrom and excluding disease not traceable to injury.'

"In Lupien v. Montana Record Publishing Co., 143 Mont.

415, 418, et seq., 390 P.2d 455, 457, we discussed the effect of the 1961 amendment to the law redefining 'injury'. We compared the new and the old definition and said:

"'As pointed out, the old phrase "fortuitous event" included either (1) an unexpected *cause or,* (2) an unexpected *result,* whereas the new phrase is limited to a "tangible happening of a traumatic nature from an unexpected *cause".*

"'The foregoing is not a play on words; rather, the distinction is the very heart of the problem as exhibited by our previous cases.'

"Probably to best analyze the problem, a quotation from respondent's brief will aid. There it is said in discussing the Lupien case: 'As this court noted in the Lupien case there had been no tangible happening from an unexpected cause. In this cause the tangible happening, the lumbosacral strain from the unexpected cause, lifting a fifteen pound block, occurred  *  *  *.'

'As seen, respondent-claimant asserts the lifting of a fifteen pound block as the unexpected cause. This, of course, is not so. Lifting the fifteen pound block was expected and done routinely and expected of him. As said in the Lupien case, supra, 143 Mont. at 419, 390 P.2d at 458:

"'Even so, accepting the district court's version of the record, the "tangible happening of a traumatic nature from an unexpected cause" was not present. Everything done by Lupien was expected of him and by him. It was his work to do just as he was doing and in varying degrees just as he had been doing for some twenty-seven years.'

"It appears then that the conclusion must be the same as in the Lupien case. There simply was no 'tangible happening of a traumatic nature from an unexpected cause.'

"Since our decision in the Lupien case, the Thirty-ninth Legislative Assembly has met. We note that at least three bills were introduced in the Senate, Senate Bills Nos. 94, 48 and 206, each of which had as their purpose a change in the

definition of injury contained in section 92-418. Senate Bill No. 94, as introduced, would have changed the definition, but later was amended and enacted into law, re-enacting section 92-418 just as it was when the Lupien case was decided; Senate Bill No. 48 and Senate Bill No. 206 would have redefined injury; Senate Bill No. 206 would have included 'strains' in the definition. Both measures were killed. Thus, we have a legislative consideration of the very definition involved."

Now, in 1967, the legislature included the words "or unusual strain." What is the meaning? How do we measure "unusual strain." It seems clear that the legislature intended to change and modify the James decision. By adding the separate distinct phrase, "or unusual strain," the legislature intended to cover just such a situation as we have here. There was no "unexpected cause" but there was an "unusual strain;" thus the measure would seem to be the result of a tangible happening of a traumatic nature which results in physical harm, be it a rupture, a strain or a sprain. We can only rely on credible medical evidence to determine it. Here we have such medical evidence.

In passing we acknowledge the employer's position that Doctor Whitehair testified that the claimant had an abnormality of the spine in that she had four lumbar vertebrae rather than five and that she had minimal osteoarthritis of the spine. However, the doctor testified that the subsequent back condition resulted from an unusual strain.

All of the medical testimony of Doctor Whitehair and Doctor Kelley, as well as reports in the Industrial Accident Board file of other doctors, add to the conclusion that the evidence clearly preponderated against the findings of the Industrial Accident Board. The finding of the district court that an injury or unusual strain resulted from an industrial accident is correct.

Accordingly, we affirm the judgment.

20

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES HASWELL, ADAIR and JOHN CONWAY HARRISON, concur.