DORIS E. (MASTERS) CARUSO, Plaintiff and Respondent, *v.* W. T. GRANT COMPANY, Employer, and Liberty Mutual Insurance Company, Defendant and Appellant.

No. 11766.
Submitted December 12, 1969.
Decided February 3, 1970.
464 P.2d 933.

Poore, McKenzie & Roth, Allen R. McKenzie, argued, Butte, for appellant.

Bolinger & Wellcome, Page G. Wellcome, argued, Bozeman, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a district court order and judgment which order and judgment in effect affirmed an order of the Industrial Accident Board, hereinafter called the I.A.B. The circumstances are somewhat confused or perhaps complicated but to reach the issues presented on this appeal a summary of background is necessary. To give a word picture of the background, three separate incidents over a period of ten years will be described.

Claimant was, in 1956, an employee of the Bozeman Canning Company. On July 17, 1956 she turned her ankle on a rock while walking in an area. The first attending physician's report described the injury as a severe sprain of the right ankle. Subsequently the claimant's back became involved. She had a laminectomy operation in early 1957. Dr. Davidson of Butte performed the operation. She had a second operation, a fusion, in October of 1957. Subsequently Dr. Davidson rated the claimant as 80% permanent partial disability on that first accident. In 1961 the claimant applied for a lump sum settlement. At that time she complained of (1) constant pain in the low back, (2) difficulty in walking any distance, (3) difficulty in standing, (4) difficulty driving, (5) pain radiating down the right leg, (6) inability to shift any weight. In addition to Dr. Davidson, Dr. Hagen of Billings examined claimant in 1961 and noted about the same conditions. The Board approved a compromise lump sum settlement of $4,200. Claimant desired the settlement to invest in property.

During the same period of time, that is, 1956 to 1961, claim-

ant was involved in an automobile accident on October 22, 1959. She filed a lawsuit alleging injuries to her back and spine and resulting pain and discomfort. In connection with that accident she was examined by Dr. Vadheim of Bozeman. On April 8, 1963, the claimant's complaints and the objective findings of Dr. Vadheim were that her physical condition was the same as reported by Drs. Davidson and Hagen in 1961. In May of 1963 a settlement was made on the back injury resulting from the car accident.

In October of 1963 the claimant first was employed following the operation of 1957. She worked only one month as she could not stand the work. She worked briefly for others; and in September of 1964 she went to work for W. T. Grant Company. She worked for that employer thereafter. On October 15, 1965 she lifted a can of popcorn oil weighing about 25 pounds and sustained a back strain. According to claimant's version at a hearing before the I.A.B. she slipped on some popcorn kernels that were strewn about on the floor. Claimant went to Dr. Kuennan, a chiropractor for treatment. Dr. Kuennan's report of October 20, 1965 indicated that claimant described the accident as follows: "I had bent over to lift a five-gallon can of popcorn grease—and as I lifted, I felt a sharp pain in my back, primarily on the left side."

Suubsequently the claimant went to Dr. Iddles, an M. D., whose report of November 24, 1965 describes the accident as follows: "Patient states that she lifted a four gallon can of popcorn grease from the floor and noticed sudden pain in the lower back with radiation down the back of the left leg."

The claimant's claim for benefits dated November 22, 1965 describes the incident as: "I lifted approximately a four gallon can of popcorn grease from the candy room floor. As I lifted I felt a pull in my lower left side and experienced a sharp pain and nausea and the pain travelled down through my left leg."

We note parenthetically here for clarity that an attempt

is made to show that the left leg is involved, rather than the right leg; although Dr. Davidson's report of December 10, 1958 indicates involvement of both the right and left legs and tenderness over both sciatic nerve notches. This was when she was rated 80% permanent partial disability. Also Dr. Vadheim's report in 1963 in connection with the auto accident noted both right and left sciatic involvement.

As noted before, the first reports, including that of claimant, described a strain from lifting only. Subsequently, in another claim filed on March 10, 1966, for the first time the slipping on loose kernels of popcorn was brought. During all this time, the claimant was consulting with attorneys. Subsequently we shall develop the medical evidence more fully.

On April 12, 1966 a hearing was held on the claim for benefits. Mr. James Carden was the hearing referee. At this hearing the testimony showed a conflict with respect to the claimed accident in that the claimant, contrary to her written claim for compensation and the employer's report as well as the Doctor's report as indicated above, in which she described the incident as a back strain from lifting, testified that she had slipped, whereas a disinterested eye witness, Steven Oviatt, indicated there was no slipping.

Mr. Carden made Findings and Conclusions on September 19, 1966. Finding of Fact No. IV was: "That the Claimant describes an accidental injury within the meaning of the Workmen's Compensation Act." Finding of Fact No. V was: "That the medical evidence reveals that the claimant's present back pathology and resulting disability was not proximately caused by the above dated injury but preexisted the injury to the same degree that it is now visualized. That the Claimant was off work from the date of the injury until December 1, 1965."

The Conclusions of Law were:

"I

"That Doris E. Masters suffered an accidental injury on October 15, 1965, while in the employ of W. T. Grant Company entitling her to compensation for total temporary disability which has not been paid.

"II

"That compensation for total temporary disability at the lawful rate of $31.60 per week be paid the claimant for the period October 16, 1965, through December 1, 1965, in a lump sum of $207.00.

"III

"That the Claimant is entitled to medical treatment in accordance with the Act for the period of total temporary disability.

"IV

"That the Claimant accept this award as a full and final award of compensation for injuries arising out of her October 15, 1965, accident."

The Board, on September 19, 1966 adopted these findings and conclusions. No appeal was taken by either party; that is, the employer and insurer did not ask for relief from the finding of "injury;" the claimant did not ask for relief from the finding as to the period of disability and the conclusion of a lack of proximate cause, even though the hearing was four months after the December 1, 1965 date and the findings were ten months later. The compensation was paid.

Subsequently, the Board, over objections of the insurer, held another hearing. This time before a different hearings officer, Mr. A. G. Pillen. This was on September 22, 1967, or about one year after the findings of Mr. Carden had been made. At this hearing, testimony was received concerning the physical condition of the claimant from Dr. Kelly of Bozeman. Dr. Kelly first saw the claimant in June of 1967. He did not know her condition prior to December 2, 1965 and did not know her condition as of April 12, 1966, the date of

the last hearing. He admitted that all of the complaints of the claimant and his own objective findings were consistent with her complaints and findings prior to the accident of October 15, 1965. He could not say with any reasonable certainty that any of his findings could be connected to the accident of October 15, 1965.

The only other medical testimony came from Dr. Iddles who had previously testified at the hearing a year before at which Mr. Carden presided. To preface our discussion of the testimony of Dr. Iddles, we will in part reiterate. Claimant has experienced difficulty with her back ever since the accident of July 17, 1956 while employed by Bozeman Canning Company. She had been unable to hold jobs between 1958 and 1963 due to difficulty when performing lifting functions. The testimony of the plaintiff's medical witnesses revealed that her complaints or subjective medical findings and objective findings which led to Dr. Davidson's rating of 80% partial permanent disability on April 25, 1960 and the findings of Dr. Vadheim in his report of March 3, 1966 following the auto accident of October 22, 1959 are the same as those upon which Dr. Iddles based his finding of disability. While counsel for claimant suggests, and the claimant's testimony emphasized, that the left leg was now causing the difficulty rather than the right leg, this is not the fact since her latest complaint to Dr. Vadheim was of her left leg.

Dr. Iddles testified for the claimant at both hearings. During the first hearing, he appeared to substantiate the claimant's version that in the incident on October 15, 1965 her left leg was primarily involved while in the old injury it was her right leg, and he inferred from this that she had another injury to involve the sciatic nerve in her left leg. Yet, as we have previously seen, the left leg had always been involved. Dr. Iddles felt that two conditions were involved, a loose fusion and a ruptured disc to cause the left leg involvement. It is quite clear that Dr. Iddles based his opinion on his con-

clusion that the old fusion had become unstable as a result of the incident or accident of October 15, 1965; whereas the record reveals that the instability of the fusion is referred to in the reports of Dr. Davidson and Dr. Hagen in connection with their disability ratings of the claimant in 1960 and 1961. Dr. Iddles admitted on cross examination that if this unstable fusion had been reported prior to October 15, 1965 he could not say with reasonable medical certainty that the disability he observed was a result of the October 15, 1965 incident.

With this testimony, Mr. Pillen made Findings and Conclusions on January 8, 1968. In these Findings, Pillen, in effect, found the opposite of what Carden had found and in effect summarily overruled the previous findings of the Board itself. Pillen's Findings in pertinent part were:

"I

"That * * * Claimant herein, was injured as the result of an industrial accident that arose out of and in the course of her employment by the W. T. Grant Company in Gallatin County, Montana on October 15, 1965. * * *"

"IV

"That the preponderance of the medical evidence now before the Board reveals that the Claimant aggravated a preexisting back condition as the result of her industrial accident of October 15, 1965 and that she had continued to be disabled and unable to work after January 1, 1966 as a result of this condition."

The Board in an order dated January 8, 1968 adopted these findings. (As we noted, before, reversing its previous order of September 19, 1966.)

Application for rehearing was made and the Board denied rehearing, particularly finding that Finding Number V quoted above was substantially supported by a preponderance of the medical evidence in that the state of disability was "reasonably attributable to the fact that the aggravation of her preexisting condition caused by the accident of October 15, 1965

in the employ of W. T. Grant Company has not subsided
* * *."

The Board filed a Memorandum which we quote:

"The petition for a rehearing by the Defendant and insurance carrier in this case has been given serious and thorough consideration, which has necessitated a review of the entire record made since the Board's Order of September 19, 1966. It is understandable enough that the carrier should strenuously object to payment of compensation over a long period of time following this claimant's rather trivial accidental injury on October 15, 1965. The word, "trival" is used because this incident would scarcely even be noticed by a normal individual with a well and unimpaired back. While the average individual in the work force is in normal health and is able to withstand the wear and tear of daily lifting, carrying, stooping, and walking, there are a few who have abnormal backs which do not stand even slight over exertion. This is particularly true in some cases in which a lumbar laminectomy and spinal fusion have been performed. This situation is true in the case of the present claimant who came to the W. T. Grant Company with an impaired back. When the employer hired this individual, it assumed all the risks incident to it, even though no pre-employment physical may have been done which would have readily demonstrated the abnormality in the Claimant's spine, and might have disqualified her for employment.

"Having once placed the claimant on the payroll, the dye was cast. Her weak back was adversely influenced by a comparatively minor accident, which the Board decided was a compensable aggravation of her pre-existing condition. It was, no doubt, hoped that a period of medical care might bring the claimant's injured back to the same condition that existed prior to the accident. For this reason, she was granted an award of compensation, and, also, medical care in order to carry out this hope.

"A study of the record indicates that the hoped for improvement did not occur, and that the aggravation still exists substantially unchanged, according to the testimony of two doctors who have seen her since 1966.

"It has to be acknowledged that the claimant's emotional makeup does not aid her recovery, and it makes her a poor candidate for a good result in the event of further surgical operation if it were to be undertaken. All of these factors make the outlook for this case discouraging.

"It has been ably and strenuously argued by counsel for the defendant that the claimant's present physical condition has been the subject of an adjudication by the Board, and that a disputed issue has been rendered res adjudicata, and that the Board may not now reopen the issue of the claimant's condition and make it the subject of a further award. Two cases in our judgment, govern this situation. They are: Mezarnich v. Republic Coal Company, 101 Mont. 78 [53 P.2d 82]; and Polich v. 110 Mont. 174 [102 P.2d 4]. (sic)

"We do not deem it necessary to go into an extended discussion of the factual situation in each of these cases or to analsize (sic) the reasoning of the Supreme Court as we think it applies to the present situation. Suffice it to say that under these two decisions, it is not necessary for the claimant to establish that there have been further deterioriation in her physical condition, nor any sort of change for the worse. If she is able to establish, as we believe she has, that her physical condition which has been declared compensable has continued to render her incapable of employment, she becomes eligible for a further award, even though the Board may have attempted to predict, or to establish that temporary disability payments for the period previously awarded would be adequate, and that medical treatment would assure her recovery to a degree sufficient to enable her to return to work at her employment.

"While it may have been res adjudicata that the claimant

suffered a compensable industrial injury as the result of an aggravation of a pre-existing condition, it was not res adjudicata that this aggravation would necessarily exist for the limited period of time specified in the Board's Order of September 19, 1966. Under the two cases cited, it is clear that the Board could not successfully divest itself of jurisdiction by making a statement in its Order that the award was to be full and final in form. The Board, under the Chairman'ship (sic) of J. Burke Clements attempted to do this in the two cases cited above many years ago, but the Supreme Court refused to go along with it. To our knowledge, none of the cases cited by counsel changes the basic rule established by these two decisions.

"Although we may be reluctant to make a further award to this claimant because we may think she is not very highly motivated to return to work in any event, we think we have to follow the preponderance of the evidence as long as it sustains her position that she continues to be disabled.

"We think the Board should now retain jurisdiction over this matter and in the event that the situation does change the defendant is not completely foreclosed from making a further application and a showing that she has substantially recovered and should be able to return to work. The Board's Order should not be interpreted as a final and flat award of compensation for a full period of three hundred weeks. The period specified is only a recital of the statutory maximum for temporary disability. The Order specifically allows a reopening should proper circumstances occur.

"Therefore, the petition for rehearing should be denied.

"Dated at Helena, Montana this 11th day of March, 1968."

An appeal was taken to the district court. Judge Lessley denied a motion by the claimant to dismiss the appeal. Judge Lessley was disqualified. Judge Shanstrom assumed jurisdiction. The employer and the insurer requested another medical examination prior to trial. Dr. Davidson who had origin-

ally performed the operations was designated. The claimant refused to be examined by Dr. Davidson. Judge Shanstrom, after hearing, denied the request for examination by Dr. Davidson, but ordered an examination by Dr. Hagen which was had.

Judge Shanstrom was disqualified and Judge Fall assumed jurisdiction. In an order filed on September 8, 1969 Judge Fall set the trial of the appeal for September 19, 1969. Judge Fall also summarily ordered payments of $3,811.50 in addition to other medical payments.

Next, on the date set for trial of the appeal the Court ordered:

"1. That the limit of this Court's jurisdiction on appeal in this case is as to the validity and justification and as to whether there is sufficient credible evidence in the Industrial Accident Board's files to support its order of January 8, 1968; and this Court finds and rules that that order was justified and the same is hereby affirmed; the request of the Defendants' herein to submit further additional testimony at this time is by the Court Denied.

"2. This Court further rules that it has no jurisdiction to entertain any appeal or hearing or rule upon any claim for additional compensation subsequent to that covered by the Industrial Accident Board ruling of January 8, 1968, and that such further proceedings with regard to any claim for compensation subsequent to that date must be presented to, filed with and heard by the Industrial Accident Board, it having retained jurisdiction to do so.

"3. In open court the undersigned Court directs that an expeditious appeal be taken from the ruling herein, or, that this Court's Order of September 8, 1969 be conformed with in all respects."

Judgment was entered on October 8, 1969 and this appeal followed.

As we began, the circumstances are confused or at least

complex. There have been at least ten doctors; numerous law-
yers; two separate hearings officers; the Industrial Accident
Board reversing itself; three judges; one judge denying a
motion to dismiss the appeal; the second judge preparing to
hear further medical testimony by ordering examination; the
third judge, in effect reversing the first two judges by de-
claring that he was without jurisdiction in part and refusing
to hear the medical testimony ordered by the second judge.
Confused? Complex? Indeed! And, we must admit that an
effort to give a word picture of voluminous files is difficult.
But this is the background upon which we approach the issues
presented on appeal.

The appellant presents. nine separate issues .on appeal, but
essentially they boil down to:

1. Is the determination of a compensable injury review-
able at this time?

2. If so, is there sufficient credible evidence to support
the findings of the Board in its second hearing; or put an-
other way, does the evidence clearly preponderate against the
Board's findings on medical causation?

The background heretofore recited suffices to indicate
a review is called for. Appellant argues that the first finding
is res adjudicata and that the Board could not reopen the
case. The respondent on the other hand, argues that the first
findings were res adjudicata only as to the finding of a de-
scribed industrial accident, but was not res adjudicata as to the
conclusion of a lack of causation or as to the length of bene-
fits. The district court seemingly agreed with this latter view.

We hold, under these circumstances, that a review is called
for. The first findings and conclusions of Mr. Carden are cer-
tainly not refined judicial findings. Were we to apply the
usual rules of res adjudicata, the entire subsequent proceed-
ings, since no appeal was taken, were pointless since the find-
ings labelled conclusions that the described accident was not

the proximate cause of the claimant's condition would be conclusive.

But, to give the claimant the benefit of the doubt, a review of the medical testimony indicates a clear lack of credible medical proof of connection or causation between the condition of the claimant and the lifting or slipping incident. Both sides concede that a back strain, under section 92-418, R.C.M.1947, at the time involved (prior to amendment in 1967) would not be a compensable injury. (See Jones v. Bairs Cafes, 152 Mont. 13, 445 P.2d 923.) Thus, it was important for the claimant to show an accident, and she did testify as to slipping on kernels of popcorn. Accepting that as proof, Mr. Carden still found a lack of proximate cause in that the alleged injury pre-existed the accident in the same degree. Although claimant's counsel would liken the medical reports of Drs. Davidson, Hagen and Vadheim on file as "hearsay medical evidence," yet their content was fully developed. And Dr. Iddles, whom claimant relies on, obviously felt that the fusion was damaged and had become unstable as a result of the incident, whereas we have shown heretofore, the fusion had become unstable prior thereto. Also, Dr. Iddles seemingly did not know that the left leg had been previously involved. It is understandable that Dr. Iddles would not know of the many examinations by previous doctors and their findings. But, he admitted that if he had known, he could not say with reasonable medical certainty that the disability he observed was a result of the October 15, 1965 incident. This testimony is not of the quality which amounts to credible medical evidence and amounts to a failure of proof that the accident was the proximate cause of the claimant's condition and disability.

As noted in the heretofore quoted Memorandum of the I.A.B., this Court's opinion Meznarich v. Republic Coal Co., 101 Mont. 78, 53 P.2d 82, and Paulich v. Republic Coal Co., 110 Mont. 174, 102 P.2d 4, are cited for the proposition that

394

if the physical condition has been declared compensable and has continued to render her incapable of employment, she may become eligible for further award, even though the Board may have attempted to make their determination final.

As a general proposition we have no problem with this rule. But, as we have emphasized by laboriously reciting the background of this case, the effect of the Board's adoption of Carden's Finding that, "the claimant's present back pathology and resulting disability was not proximately caused by the above dated injury but pre-existed the injury to the same degree * *. *" was that the lump sum award of $207 was a full settlement of a compromise nature. It was paid, and neither side appealed or even petitioned to have the findings corrected in any manner. Under these circumstances the above rules of Meznarich and Paulich simply do not come into play. The Board should not have reopened the case.

Claimant's brief infers that the $4,200 lump sum settlement in the first accident was insufficient and that the $800 settlement of the auto accident was insufficient, but obviously that has nothing to do with the problem.

From what we have indicated, the I.A.B. was incorrect in opening up the inquiry for a second hearing; but even then it was in error in finding causation of the injury. Thus, too, the district court was in error.

Accordingly, the judgment is reversed and the findings of the I.A.B. of September 19, 1966 are reinstituted.

MR. CHIEF JUSTICE JAMES T. HARRISON, MR. JUSTICES HASWELL and JOHN C. HARRISON and the HONORABLE LeROY L. McKINNON, District Judge sitting in place of MR. JUSTICE BONNER, concur.