IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| NORTHWEST CONSTRUCTION, INC., | ) | No. 76774-7-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| JASON P. SMART, and STATE OF | ) | UNPUBLISHED OPINION |
| WASHINGTON, DEPARTMENT OF | ) | |
| LABOR & INDUSTRIES, | ) | |
| | ) | |
| Respondents. | ) | FILED: September 24, 2018 |

SCHINDLER, J. — Under the Industrial Insurance Act, Title 51 RCW, the party challenging the decision of the Board of Industrial Insurance Appeals (Board) must prove the decision is incorrect by a preponderance of the evidence. The Board found that Jason P. Smart sustained a workplace injury that aggravated his pre-existing degenerative disk disease and awarded benefits. Northwest Construction Inc. (Northwest) appealed the decision to superior court. A jury determined the Board's finding was correct. Because substantial evidence supports the Board's finding and Northwest fails to demonstrate prejudicial instructional error, we affirm the jury verdict.

FACTS

Twenty-seven-year-old Jason P. Smart worked for Northwest Construction Inc. (Northwest) as a manual laborer for approximately nine years. In November 2012,

registered nurse practitioner Margaret Larson examined Smart. Smart complained of a "burning, throbbing" pain on the right side of his back. Smart did not identify any specific injury but said he woke up one day with the pain. Larson diagnosed "inflammation of the muscles" and prescribed physical therapy and medication.

When Smart saw Larson again in December 2013, he described "multiple years" of "constant lower back pain" but said the pain had increased in the past year. Smart said that when he bent over in the shower on the previous day, he felt "radiating numbness and pain" in his buttocks. Larson diagnosed Smart with "[a]cute and chronic low back pain with new strain versus disk herniation. Paresthesia on hands and feet with radiculopathy." Larson administered an anti-inflammatory injection and referred Smart to neurosurgeon Dr. Michael Schlitt.

After reviewing the results of a December 2013 MRI,[1] Dr. Schlitt diagnosed Smart with "mild to moderate degenerative disk disease at T12[2] to L1;[3] in other words, at the top of the low back spine, and L5-S1,[4] at the bottom of the low back spine where it joins the pelvis." Dr. Schlitt noted that disk degeneration "sort of presupposes some degree of disk protrusion most of the time." Over the course of the following months, Smart received cortisone and steroid injections and took oxycodone for the pain.

Smart saw Dr. Schlitt several times from March to June 2014. Smart reported he was continuing to experience essentially the same significant pain along the lumbar spine and the back of both thighs. Dr. Schlitt acknowledged that given the types of

---

[1] Magnetic resonance imaging.
[2] Twelfth thoracic vertebra.
[3] First lumbar vertebra.
[4] Fifth lumbar vertebra to first sacrum vertebra.

manual labor that Smart performed, he was likely to experience regular "flare-ups" of his condition. Before August 11, Smart had not missed more than a half-day of work for medical appointments.

On Monday, August 11, 2014, Smart went to work at the excavation site for a high-rise building. Smart felt a "pop" in his back and pain down his leg and fell.

> I was working along with the excavator. I was shoveling dirt away from the wall and off the wall so he could get it. I had noticed that there was some dirt and some Shotcrete that was attached to the wall still up on top, and I twisted and reached up — knocked the dirt off. I had a pop in my back, had pain go down my left leg, and I fell to the ground.

Smart was unable to get up. He described the pain and pressure on his back as "much greater" than he had ever experienced before. Smart was "unable to move [his] leg, and that had . . . never happened before."

Coworker Terry Weigelt saw Smart on the ground and rushed over. Smart was "sweating profusely" and "having a hard time breathing." Paramedics transported Smart to the Overlake Medical Center emergency room.

Northwest informed risk management consultant Luis Cadavid that Smart was being transported to Overlake. Cadavid entered the emergency room and listened as Smart provided the attending doctor with his medical history.

> [Smart] reported that he has been dealing with . . . similar back issues for several years, and has a neurologist who has been treating him for his back condition. When asked how frequently this type of thing happens, [Smart] responded that it happened randomly, and he had, in fact, just had this happen to him on Saturday night for no apparent reason. He further mentioned that his neurologist has previously recommended surgical treatment, but he has not done it because he could not take the time off work. He did acknowledge that this was not related to work.

Dr. Marcus Trione treated Smart in the emergency room. Smart said he felt a " 'pop in his back' " after returning home from work the previous Saturday. While at

work on Monday, August 11, Smart made "a lifting, twisting motion involving a shovel and felt immediate back pain and pain radiating into the left leg, which caused him to drop to the ground."

Dr. Trione was aware that Smart had a history of chronic low back pain and that Smart's neurosurgeon had recommended surgery as an ultimate solution. Based on a physical examination and review of his medical history, Dr. Trione initially assessed Smart with "an exacerbation of chronic low back pain with radicular pain, . . . as well as potentially new weakness in . . . his left leg, with dorsiflexion and plantar flexion of his left foot." Dr. Trione ordered an MRI. The MRI showed "disk bulge at L5-S1, with no evidence of compression of any neural structures, and then there was also a right-sided bulge at T12-L1, with no evidence of compression of any neural structures."

Although the MRI showed "no ongoing evidence of nerve root compression," according to Dr. Trione, the MRI "is a static image" that "doesn't necessarily give you a clear picture back in time of exactly what happened at the time of the injury." Under the circumstances, Dr. Trione was unable to determine with certainty the precise cause of Smart's pain. Smart remained hospitalized for nearly a week.

On September 18, neurologist Dr. Lewis Almaraz conducted an independent medical examination of Smart for the Department of Labor and Industries (Department). The review of Smart's medical records was limited to the period of hospitalization in August.

Dr. Almaraz conducted a physical examination. At the time of the examination, Smart reported "constant" pain in his low back, including "stabbing, burning, and aching." Dr. Almaraz concluded there were "no objective orthopedic or neurological

4

findings." Dr. Almaraz also concluded the reported "mechanism of injury" did not appear "to be sufficient enough to result in any sort of injury to his back." Dr. Almaraz did not believe the August 11 incident " 'aggravated or exacerbated the preexisting back issues, either temporarily or permanently.' "

Neurosurgeon Dr. Richard Wohns began seeing Smart in March 2015. A physician assistant performed a physical examination of Smart. Dr. Wohns reviewed a December 2014 MRI and the results of a January 2015 diskogram, a dye-based procedure that provides information about the integrity of the spinal disks. The MRI showed "degenerative disk disease at L4-5 and L5-S1." The diskogram indicated that "L5-S1 degenerative disk disease" was the source of Smart's pain. Based on the examination results and a review of Smart's medical history, Dr. Wohns concluded that Smart "had a chronic low back condition which was exacerbated by the on-the-job injury, rather than caused" by the job injury, and that the "need for medical treatment" was "causally related" to the August 11 injury.

Dr. Wohns performed surgery on Smart in June 2015 and replaced the damaged L5-S1 disk with an artificial disk. After the surgery, Smart no longer experienced pain in his lower back or numbness and regained essentially "full strength" in his leg.

Smart timely filed a claim for benefits with the Department. On August 22, 2014, the Department rejected the claim. The Department found "no proof of a specific injury at a definite time and place in the course of employment." The Department concluded that Smart's condition "is not the result of an industrial injury."

Smart appealed to the Board of Industrial Insurance Appeals (Board). On April 27, 2016, an industrial administrative law judge (ALJ) filed a proposed decision and

order. The ALJ concluded the evidence established that an industrial injury had

aggravated Smart's condition. The Board denied Northwest's petition for review and

adopted the proposed decision as the "Decision and Order" of the Board.

Northwest appealed the Board's decision to King County Superior Court.

Following trial on the record before the Board, the jury returned a verdict finding the

Board's decision correct. The special verdict form states:

> Jason P. Smart sustained an injury in the course of employment on
> August 11, 2014, when he twisted and reached up with a shovel knocking
> some debris off a wall and fell to the ground in pain. The incident
> proximately caused aggravation of his degenerative disc disease at L4-5
> and L5-S1.

Northwest appeals.

## ANALYSIS

Standard of Review

The Washington Industrial Insurance Act (IIA), Title 51 RCW, governs judicial

review of worker compensation determinations. See generally Rogers v. Dep't of Labor

& Indus., 151 Wn. App. 174, 179-81, 210 P.3d 355 (2009). The superior court reviews

a decision of the Board de novo, based solely on the evidence and testimony presented

to the Board. RCW 51.52.115; see also Ruse v. Dep't of Labor & Indus., 138 Wn.2d 1,

5-6, 977 P.2d 570 (1999); Hendrickson v. Dep't of Labor & Indus., 2 Wn. App. 2d 343,

351, 409 P.3d 1162, review denied, 190 Wn.2d 1030, 421 P.3d 450 (2018). The

Board's findings and decision are prima facie correct. RCW 51.52.115. The party

challenging the decision bears the burden of proving the decision is incorrect by a

"preponderance of competent, credible evidence." Hadley v. Dep't of Labor & Indus.,

116 Wn.2d 897, 903, 810 P.2d 500 (1991). Either party may request a jury trial. RCW

51.52.115; see also Afoa v. Dep't. of Labor & Indus., 3 Wn. App. 2d 794, 808-11, 418 P.3d 190 (2018) (limiting evidence to the certified Board record in an appeal to superior court does not violate constitutional right to jury trial or separation of powers doctrine).

The ordinary standards of review govern appellate court review of the superior court decision. RCW 51.52.140 (an appeal from the superior court judgment "shall lie . . . as in other civil cases."). "We therefore review whether substantial evidence supports the trial court's factual findings and then review, de novo, whether the court's conclusions of law flow from the findings." Cantu v. Dep't of Labor & Indus., 168 Wn. App. 14, 21, 277 P.3d 685 (2012). Substantial evidence is evidence "sufficient to persuade a rational, fair-minded person that the finding is true." Cantu, 168 Wn. App. at 21. We view the record in the light most favorable to the party who prevailed in superior court. Rogers, 151 Wn. App. at 180. " 'We are not to reweigh or rebalance the competing testimony and inferences, or to apply anew the burden of persuasion, for doing that would abridge the right to trial by jury.' " Rogers, 151 Wn. App. at 180-81 (quoting Harrison Mem'l Hosp. v. Gagnon, 110 Wn. App. 475, 485, 40 P.3d 1221 (2002)).

## Sufficiency of the Evidence

Northwest contends Smart failed to submit any evidence that the August 11 incident caused a new injury or exacerbated his pre-existing back condition. Northwest maintains that Smart's symptoms were the result of pre-existing and long-term chronic low back pain and that his degenerative disk disease remained essentially the same both before and after the August 11 incident. We disagree.

7

Under the IIA, an injury is generally compensable if it occurs during the course of employment and the claimant establishes "a causal relationship between the injury and the condition for which compensation is sought." Goyne v. Quincy-Columbia Basin Irrig. Dist., 80 Wn. App. 676, 682, 910 P.2d 1321 (1996). The IIA defines "injury" as "a sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result, and occurring from without, and such physical conditions as result therefrom." RCW 51.08.100. A pre-existing condition does not preclude benefits for a workplace injury. See Harbor Plywood Corp. v. Dep't. of Labor & Indus., 48 Wn.2d 553, 556, 295 P.2d 310 (1956). A worker is entitled to recovery under the IIA if he or she sustains an injury that aggravates a "preexisting infirmity." Longview Fibre Co. v. Weimer, 95 Wn.2d 583, 589, 628 P.2d 456 (1981). Proof of aggravation must rest on some objective findings. Favor v. Dep't of Labor & Indus., 53 Wn.2d 698, 703-04, 336 P.2d 382 (1959). "[T]here must be some tangible and provable relationship between the injury or the disease suffered and the employment." Favor, 53 Wn.2d at 703. This "relationship" is not to be proved based "on a purely subjective basis." Favor, 53 Wn.2d at 703.

The evidence before the Board establishes Smart had been treated for chronic low back pain and degenerative disks for several years before the injury. But the condition did not cause Smart to miss any appreciable amount of work during those years. Dr. Schlitt treated Smart before the injury and noted his employment as a manual laborer made it likely that he would experience regular "flare-ups" of his condition.

On August 11, after he made a twisting, upward motion with a long-handled shovel to dislodge some debris from the wall, Smart felt a pop in his back, followed by severe pain that caused him to fall to the ground. Smart was unable to get up and was hospitalized for nearly a week. Smart characterized the pain and resulting disability as more severe than he had ever experienced before. In the years before the injury, despite treatment, Smart's pain had remained relatively constant.

After reviewing Smart's medical history, including MRI results, physical examinations, and a diskogram, Dr. Wohns concluded the August 11 workplace injury aggravated or exacerbated the existing degenerative back condition. Dr. Wohns concluded the August 11 injury contributed in part to Smart's need for treatment. Although Dr. Trione was unable to determine the specific cause of Smart's pain on August 11, his assessment was that the workplace injury "exacerbate[ed]" Smart's condition and caused "potentially new weakness" in his leg.

Northwest claims Smart was suffering from nothing more than a recurring attack of low back pain that began on Saturday, two days before August 11. Northwest also relies on the opinion of Dr. Almaraz that the August 11 incident did not aggravate or worsen the "preexisting back issues" and Smart's alleged statement in the emergency room overheard by Northwest risk management consultant Cadavid that Smart's back pain would appear "randomly" and was "not related to work." But Northwest is essentially asking this court to reweigh the evidence and reach a different result. We do not weigh the evidence or make credibility assessments. See Hendrickson, 2 Wn. App. 2d at 352. Substantial evidence supports the Board's finding that Smart sustained an injury in the course of employment that aggravated his degenerative disk disease.

9

Special Consideration Jury Instruction

Northwest contends the trial court erred by instructing the jury to give "special consideration" to the testimony of an attending physician. Jury instruction 12 states:

> You should give special consideration to testimony given by an attending physician. Such special consideration does not require you to give greater weight or credibility to, or to believe or disbelieve, such testimony. It does require that you give any such testimony careful thought in your deliberations.

Northwest argues that because Dr. Schlitt, Dr. Trione, and Dr. Wohns were all attending physicians and gave conflicting opinions, the special consideration instruction was confusing and erroneous. We review the trial court's decision to give a particular jury instruction for an abuse of discretion. Stiley v. Block, 130 Wn.2d 486, 498, 925 P.2d 194 (1996). The court abuses its discretion if the instruction is based on an erroneous view of the law. Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 339, 858 P.2d 1054 (1993).

In Clark County v. McManus, 185 Wn.2d 466, 476, 372 P.3d 764 (2016), our Supreme Court held that the special consideration instruction is generally mandatory in worker compensation cases. The instruction is based primarily on the recognition that "[a]n attending physician who has cared for and treated a patient over a period of time 'is better qualified to give an opinion as to the patient's disability than a doctor who has seen and examined the patient once.' " Ruse, 138 Wn.2d at 6 (quoting Spalding v. Dep't of Labor & Indus., 29 Wn.2d 115, 128-29, 186 P.2d 76 (1947)). But the special consideration instruction may not be appropriate if there is "multiple, conflicting attending physicians' testimony" or when there are "articulable reasons for not accepting the attending physician's or physicians' testimony." Clark County, 185 Wn.2d at 474-75.

10

We conclude any error was harmless. "An erroneous jury instruction is harmless if it is 'not prejudicial to the substantial rights of the part[ies] . . . , and in no way affected the final outcome of the case.' " <u>Blaney v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 160</u>, 151 Wn.2d 203, 211, 87 P.3d 757 (2004)[5] (quoting <u>State v. Britton</u>, 27 Wn.2d 336, 341, 178 P.2d 341 (1947)).[6]

Contrary to Northwest's argument, the three attending physicians did not give conflicting opinions. Dr. Schlitt treated Smart before August 11. Dr. Schlitt noted that Smart's employment would likely lead to flare-ups of his condition. Dr. Schlitt did not express an opinion on the nature of Smart's workplace injury. Emergency room physician Dr. Trione was unable to find an acute injury or determine the specific cause of Smart's pain. But Dr. Trione did not rule out a workplace injury, noting the MRI did not show "exactly what happened at the time of the injury" on August 11. Dr. Wohns testified that the injury exacerbated Smart's pre-existing condition. Nothing in the attending physicians' testimony was inherently conflicting or inconsistent.

Further, as the court in <u>Clark County</u> stressed, the special consideration instruction " 'does not require the jury to give more weight or credibility to the attending physician's testimony but to give it careful thought.' " <u>Clark County</u>, 185 Wn.2d at 472 (quoting <u>Hamilton v. Dep't of Labor & Indus.</u>, 111 Wn.2d 569, 572, 761 P.2d 618 (1988)). Here, the court also instructed the jury, in pertinent part, that "[y]ou are the sole judges of the credibility of the witnesses" and that "[y]ou are not . . . required to accept

---

[5] Alterations in original.

[6] Therefore, we need not determine whether Northwest's objection to the instruction was sufficient to preserve the issue for appellate review or whether the court abused its discretion in giving the instruction.

[the] opinion" of the expert witnesses. Nor has Northwest presented any argument suggesting how the special consideration instruction, when viewed in context, was confusing, misleading, or prevented Northwest from fully arguing its theory of the case. The conclusory assertion of Northwest that the special consideration jury instruction allowed Smart "to divert the jury from the testimony of Dr. Schlitt and Dr. Almaraz" does not demonstrate prejudice.

Attorney Fees

Smart requests attorney fees on appeal. See RAP 18.1(a). RCW 51.52.130(1) requires a court to award reasonable attorney fees "in cases where a party other than the worker . . . is the appealing party and the worker's . . . right to relief is sustained." Subject to compliance with RAP 18.1(d), we award Smart attorney fees on appeal under RCW 51.52.130(1).

We affirm the jury verdict finding the Decision and Order of the Board correct that Smart sustained a workplace injury that aggravated his pre-existing degenerative disk disease.

WE CONCUR: